AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**

Jan 31 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ carolinal          DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.  23-mj-08049-LR |
| Black Samsung | ) |
| Model: Galaxy A52 4G | ) |
| IMEI: 354961652868309 | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Cristina Fuentes incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Cristina Fuentes
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*

Date:   01/31/2023

*Judge's signature*

City and state:  El Centro, California        HON. LUPE RODRIGUEZ, JR , US MAGISTRATE JUDGE
*Printed name and title*

## **ATTACHMENT A-2**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Black Samsung
               Model: Galaxy A52 4G
               IMEI: 354961652868309
               Seized from Porfirio ARRIZON-Lopez
               **(Target Device #2)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 12, 2022, up to and including January 12, 2023, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Cristina Fuentes, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1**:               Apple Black iPhone
                       Model: iPhone 12
                       IMEI: 353669756192642
                       Seized from Sebastian FRANCO
                       **(Target Device #1)**

**A-2**:               Black Samsung
                       Model: Galaxy A52 4G
                       IMEI: 354961652868309
                       Seized from Porfirio ARRIZON-Lopez
                       **(Target Device #2)**

**A-3**:               Orange Motorola
                       Model: Moto e7i Power
                       IMEI: 351372735345660
                       Seized from Carlos Manuel ENRIQUEZ-Martinez
                       **(Target Device #3)**

**A-4**:               Black Redmi
                       Model: Xiaomi 10A
                       IMEI: 865614066157472
                       Seized from Simon GONZALEZ-Sanchez
                       **(Target Device #4)**

**A-5**:               Red Apple iPhone
                       Model: Unknown
                       IMEI: 356550101293771
                       Seized from Omar JUAREZ-Martinez
                       **(Target Device #5)**

**A-6:**        Naomicase Cell Phone (Red)
                Model: Unknown
                IMEI: Unknown
                Seized from Omar JUAREZ-Martinez
                **(Target Device #6)**

as further described in Attachments A-1 to A-6, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Sebastian FRANCO (FRANCO), for illegally transporting into the United States aliens, Simon GONZALEZ-Sanchez, Carlos Omar JUAREZ-Martinez, Porfirio ARRIZON-Lopez and Carlos Manuel ENRIQUEZ-Martinez, (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from FRANCO on or about January 11, 2023, incident to FRANCO's arrest. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since May 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 24-week Academy curriculum covers specialized training in the Immigration

and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other

applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.  On January 10, 2023, Border Patrol Agents assigned to the El Centro Sector Intelligence Unit - Field Intelligence Team (FIT) were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility.  Specifically, Agents were conducting mobile surveillance on a burgundy Chrysler PT Cruiser (PT Cruiser) that was previously identified as a known alien smuggling conveyance from a prior event. While conducting surveillance, FIT Agents followed the PT Cruiser towards the International Boundary (IB) where El Centro Border Patrol Station camera operators observed four (4) suspected illegal aliens run north from the All-American Canal, which is approximately fifty yards north of the IB, in the direction of Anza Road. When they reached Anza Road, camera operators observed as the four (4) suspected illegal aliens boarded the PT Cruiser and travelled away from the area. FIT Agents continued surveillance on the PT Cruiser to various commercial establishments until the PT Cruiser arrived at an apartment complex on the 600 block of North 5th Street in Brawley, California. The PT Cruiser dropped off the four passengers and they went into Apartment #4 accompanied by a fifth male individual.  After the four passengers were in

the apartment, the PT Cruiser pulled out of the apartment complex parking lot and left the area. FIT Agents terminated surveillance on the PT Cruiser and initiated surveillance on Apartment #4 as the suspected stash house.

11.    FIT Agents maintained 24-hour surveillance on the Apartment and, on January 11, 2023, Agents observed a gray Nissan Altima (Altima), bearing Arizona license plates, arrive at the apartment complex at approximately 6:15 p.m. The Altima pulled into the apartment complex parking lot and the same male individual who had accompanied the passengers of the PT Cruiser the day before, came out of Apartment #4 before walking to the driver's door of the Altima and conversing with the driver of the Altima, later identified as FRANCO.

12.    While conducting surveillance, Agents queried the Nissan's license plate through law enforcement databases and learned that the vehicle was registered to PV Holdings (AVIS/Budget Rental Car).   After conversing with FRANCO, the male individual walked to the parking spot closest to Apartment #4 and waved the Altima towards the parking spot. The male individual assisted FRANCO as he reversed into the parking space and the four individuals came out of Apartment #4 and got into the Altima. Based on their training and experience, and the facts outlined above, FIT Agents believed they were witnessing a smuggling event. The Altima then left the stash house and drove south towards the city center of Brawley. The driver of the Altima made several random turns, drove in circles, and at one point pulled over in a residential neighborhood and turned the lights of the Altima off.  Thereafter, FRANCO travelled south on Dogwood Road to Interstate 8 and merged onto the westbound lanes to begin travelling towards San Diego, California. Once the Altima was on the way to San Diego, FIT Agents contacted uniformed Border Patrol Agents from the El Centro Border Patrol Station and requested a fully marked Border Patrol service vehicle in order to assist them with a vehicle stop to perform an immigration inspection on all occupants within the Altima. As the Altima continued travelling westbound on Interstate 8, El Centro Border Patrol Agents responded to the area. As the Altima passed mile marker 17, El Centro BPA M. Macias activated the emergency

lights and sirens of his fully marked Border Patrol service vehicle. The Altima drastically slowed down, pulled over to the shoulder of Interstate 8 and slowly continued travelling westbound. After approximately one hundred yards, the Altima came to a complete stop.

13.     BPA M. Macias and BPA Heipt, who had Border Patrol markings and insignia fully visible approached the Altima. Agent Heipt identified himself as a Border Patrol Agent to FRANCO and the front seat passenger. Agent Heipt questioned FRANCO as to his citizenship and ascertained that FRANCO was a United States Citizen. Agent Heipt requested FRANCO's identification and was provided FRANCO's driver's license. Agent Heipt then questioned the front seat passenger, later identified as Carlos Omar JUAREZ-Martinez (JUAREZ), as whether he had any identification. Both JUAREZ and FRANCO stated: "No." Agent Heipt then questioned JUAREZ as to his citizenship. After JUAREZ stated he was from Mexico, FRANCO told Agent Heipt that JUAREZ was from Calexico, California. While conversing with both FRANCO and JUAREZ, BPA M. Macias, Agent Heipt and additional FIT Agents observed a white blanket spread across the back seat with what appeared to be human shaped figures under it. Agent Heipt asked FRANCO if there were any people hiding under the blanket and FRANCO stated: "No." Agent Heipt then asked FRANCO if he could open the rear door and look under the blanket. FRANCO stated that he was not comfortable with that and that he would rather not have anyone look inside of the Altima.

14.     At this time Agent Clinton walked to the driver's door and asked FRANCO to exit the Altima, to which he complied. As Agent Heipt placed handcuffs on FRANCO, Agent Clinton knocked on the rear window of the Altima and said "get up" in the Spanish language. Three (3) individuals, later identified as Porfirio De Jesus ARRIZON-Lopez (ARRIZON), Carlos Manuel ENRIQUEZ-Martinez (ENRIQUEZ) and Simon GONZALEZ-Sanchez (GONZALEZ) emerged from under the blanket. Agent Clinton identified himself as a Border Patrol Agent to ARRIZON, ENRIQUEZ and GONZALEZ and questioned them as to their citizenship. ARRIZON, ENRIQUEZ and GONZALEZ admitted to being in the United States illegally. At this time, JUAREZ again stated that he

was from Mexico and was in the United States illegally. JUAREZ, ARRIZON, ENRIQUEZ and GONZALEZ admitted they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. FRANCO, JUAREZ, ARRIZON, ENRIQUEZ and GONZALEZ were placed under arrest and were transported to the Calexico Border Patrol Station for further processing.

15.   During a search incident to the arrest of FRANCO, one black Apple iPhone (Target Device #1) was found on FRANCO's person, FRANCO claimed ownership of Target Device #1.  Five cellphones were discovered on the floorboard of the Altima during an inventory search of the vehicle. Of the five cellphones, a black Samsung (Target Device #2) was claimed by ARRIZON; an orange Motorola (Target Device #3) was claimed by ENRIQUEZ; a black Redmi cell phone (Target Device #4) was claimed by GONZALEZ; a red apple iPhone (Target Device #5) and a red Naomicase phone (Target Device #6) were claimed by JUAREZ.

16.   At the Calexico Border Patrol Station, FRANCO was advised of his rights as per Miranda. FRANCO stated he understood his rights and was willing to provide a statement without the presence of an attorney.  FRANCO stated he met some individuals at a nightclub in Mexicali and was offered $2000-3000 USD to pick up some people.  When FRANCO was asked if he knew that the four individuals he had picked up were illegal aliens, FRANCO stated he did not want to answer that question.  FRANCO stated he was instructed to drive to a small market where he was met by two young adults and he was then instructed by these young adults to drive to an apartment where he picked up the four individuals he was apprehended with.

17.   Material Witness Simon GONZALEZ-Sanchez stated he is a citizen of Mexico and is not in possession of a document that would allow him to enter, work or remain in the United States. GONZALEZ stated he was traveling to Los Angeles. GONZALEZ stated his cousin made smuggling arrangements and he was being charged $200,000 MXN Pesos to be smuggled into the U.S.  GONZALEZ was shown photo line ups 378 A and B and was asked if he could identify anyone.  GONZALEZ was unable to

identify anyone.  Material Witness Omar JUAREZ-Martinez stated he is a citizen of Mexico and is not in possession of a document that would allow him to enter, work or remain in the United States. JUAREZ stated he was traveling to Los Angeles. JUAREZ stated he made smuggling arrangements with a male subject and he was being charged $10,000 USD to be smuggled into the U.S. JUAREZ was shown photo line ups 378 A and B and was asked if he could identify anyone.  JUAREZ was unable to identify anyone.

18.     Material Witness Porfirio De Jesus ARRIZON-Lopez stated he is a citizen of Mexico and is not in possession of a document that would allow him to enter, work or remain in the United States. ARRIZON stated he was traveling to Washington to work. ARRIZON stated his family members made smuggling arrangements with a male subject and he was being charged $10,000 USD to be smuggled into the U.S. ARRIZON was shown photo line ups 378 A and B and was asked if he could identify anyone.  ARRIZON was unable to identify anyone.  Material Witness Carlos Manuel ENRIQUEZ-Martinez stated he is a citizen of Mexico and is not in possession of a document that would allow him to enter, work or remain in the United States. ENRIQUEZ stated he was traveling to Los Angeles. ENRIQUEZ stated his uncle made smuggling arrangements with a smuggler and he was being charged $25,000 MXN Pesos to be smuggled into the U.S. ENRIQUEZ was shown photo line ups 378 A and B and was asked if he could identify anyone. ENRIQUEZ was unable to identify anyone.

19.     Based upon my experience and investigation in this case, I believe that FRANCO, JUAREZ, ARRIZON, ENRIQUEZ, GONZALEZ and other persons, as yet unknown, were involved in an alien smuggling venture and that FRANCO, JUAREZ, ARRIZON, ENRIQUEZ and GONZALEZ used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States.  Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

20.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on December 12, 2022, up to and including January 12, 2023, the day after the arrest of FRANCO and the Material Witnesses.

## METHODOLOGY

21.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

1   record the process and the results using digital photography.  This process is time and labor

2   intensive and may take weeks or longer.

3       22.    Following the issuance of this warrant, a case agent familiar with the

4   investigation will collect the Target Devices and subject them to analysis. All forensic

5   analysis of the data contained within the telephones, and their memory cards will employ

6   search protocols directed exclusively to the identification and extraction of data within the

7   scope of this warrant.

8       23.    Based on the foregoing, identifying and extracting data subject to seizure

9   pursuant to this warrant may require a range of data analysis techniques, including manual

10   review, and, consequently, may take weeks or months.  The personnel conducting the

11   identification and extraction of data will complete the analysis within ninety (90) days of

12   the date the warrant is signed, absent further application to this Court.

13       / /

14       / /

15       / /

16       / /

17       / /

18       / /

19       / /

20       / /

21       / /

22       / /

23       / /

24       / /

25       / /

26       / /

27       / /

28       / /

11

**CONCLUSION**

24.     Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that FRANCO, JUAREZ, ARRIZON, ENRIQUEZ and GONZALEZ used the Target Devices to facilitate the offense of alien smuggling.  The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324.  I also believe that probable cause exists to believe that evidence of illegal activity committed by FRANCO, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Cristina Fuentes, Border Patrol Agent
United States Border Patrol


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 31st day of January, 2023.

2:56 p.m.

HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A-1**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**                    Apple Black iPhone
                           Model: iPhone 12
                           IMEI: 353669756192642
                           Seized from Sebastian FRANCO
                           **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**             Black Samsung
                   Model: Galaxy A52 4G
                   IMEI: 354961652868309
                   Seized from Porfirio ARRIZON-Lopez
                   **(Target Device #2)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:        Orange Motorola
Model: Moto e7i Power
IMEI: 351372735345660
Seized from Carlos Manuel ENRIQUEZ-Martinez
**(Target Device #3)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**        Black Redmi
Model: Xiaomi 10A
IMEI: 865614066157472
Seized from Simon GONZALEZ-Sanchez
**(Target Device #4)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-5**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5**:        Red Apple iPhone
Model: Unknown
IMEI: 356550101293771
Seized from Omar JUAREZ-Martinez
**(Target Device #5)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-6**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-6:**   Naomicase Cell Phone (Red)
     Model: Unknown
     IMEI: Unknown
     Seized from Omar JUAREZ-Martinez
     **(Target Device #6)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 12, 2022, up to and including January 12, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.